**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LINDA AUSTIN,
Plaintiff-Appellant,

v.

OWENS-BROCKWAY GLASS CONTAINER,
INCORPORATED,

Defendant-Appellee.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; EQUAL EMPLOYMENT
ADVISORY COUNCIL,
Amici Curiae.

No. 94-1213

LINDA AUSTIN,
Plaintiff-Appelleee,

v.

OWENS-BROCKWAY GLASS CONTAINER,
INCORPORATED,

Defendant-Appellant.

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION; EQUAL EMPLOYMENT
ADVISORY COUNCIL,
Amici Curiae.

No. 94-1265

Appeals from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Chief District Judge.
(CA-93-51-D)

Argued: February 3, 1995

Decided: March 12, 1996

Before WIDENER and HALL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

_____

Affirmed as modified and remanded by published opinion. Judge Widener wrote the majority opinion, in which Senior Judge Chapman joined. Judge Hall wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Barbara Rubin Hudson, Danville, Virginia, for Appellant. Karen Marie Moran, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae EEOC. Thomas Michael Lucas, Mary Chapman Hamilton, VANDEVENTER, BLACK, MEREDITH & MARTIN, Norfolk, Virginia, for Appellee. **ON BRIEF:** James R. Neely, Jr., Deputy General Counsel, Gwendolyn Young Reams, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Samuel A. Marcosson, Office of General Counsel, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae EEOC. Robert L. O'Donnell, VANDEVENTER, BLACK, MEREDITH & MARTIN, Norfolk, Virginia, for Appellee. Douglas S. McDowell, Ann Elizabeth Reesman, MCGUINESS & WILLIAMS, Washington, D.C., for Amicus Curiae Advisory Council.

_____

**OPINION**

WIDENER, Circuit Judge:

Linda Austin filed suit in the United States District Court for the Western District of Virginia against Owens-Brockway Glass Container, Inc., alleging violations of Title VII and the Americans with Disabilities Act (Disabilities Act or ADA). The district court granted summary judgment in favor of Owens-Brockway because Miss Austin failed to submit her claims to mandatory arbitration under a collec-

tive bargaining agreement. Miss Austin appeals, claiming that the district court incorrectly held that she was required to arbitrate her statutory claims. Finding no error, we affirm with only slight modification.

I.

Because the district court disposed of Miss Austin's claims on a motion for summary judgment, all justifiable inferences of relevant facts are drawn in favor of the plaintiff. The grant of summary judgment is reviewed de novo. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Miss Austin worked for Owens-Brockway for approximately 14 years until she was injured on the job in 1992. Her physician released her for light-duty work in August 1992, but Owens-Brockway informed her that no light-duty employment was available. Instead, Miss Austin was put on medical leave and provided with workers' compensation benefits. While Miss Austin was on leave, Owens-Brockway eliminated Miss Austin's job classification of equipment cleaner/oiler-greaser. In June 1993, Miss Austin met with Robert McCauley, the Director of Industrial Relations at Owens-Brockway. She learned that Owens-Brockway had terminated her employment and that she would not be reassigned to light-duty work.

Miss Austin filed suit against Owens-Brockway on October 13, 1993. She alleged Owens-Brockway violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq ., and Title VII, 42 U.S.C. § 2000e et seq., by refusing to offer her light-duty work and by terminating her employment while a male employee, the only other employee in her eliminated job classification, was reassigned to another position at the plant.

Owens-Brockway filed a motion to dismiss for lack of subject matter jurisdiction. The company argued that Miss Austin failed to file her claim with the EEOC and had not obtained a right to sue letter, both prerequisites to filing Disabilities Act and Title VII claims in court. See 42 U.S.C. §§ 2000e-5(b), 12117(a). Further, Owens-Brockway took the position that Miss Austin's claims were subject to mandatory arbitration under a collective bargaining agreement covering her employment with Owens-Brockway. Because Miss Austin

3

failed to file a claim under the grievance-arbitration procedure, Owens-Brockway maintained that she was precluded from filing suit in federal court.

Owens-Brockway offered affidavits in support of its motion to dismiss, so the district court treated the motion as one for summary judgment. Fed. R. Civ. P. 12(b). The district court found that a significant factual dispute existed as to what actions Miss Austin took to file her complaint with the EEOC, and therefore, without deciding the question, declined to grant summary judgment for failure to file a claim or obtain a right to sue letter.[1]

The district court granted summary judgment in favor of Owens-Brockway based on Miss Austin's failure to process her claims under the grievance-arbitration procedure in the collective bargaining agreement. The court held that that agreement subjected Miss Austin's claims to mandatory arbitration. Thus, the court held that under Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), because she did not submit her claim to arbitration under the collective bargaining agreement, she was precluded from bringing the lawsuit.

II.

A.

Miss Austin first takes the position that she did not have standing under the collective bargaining agreement to arbitrate her dispute with her employer for gender and disability-based claims of discrimination. The argument goes that having no standing, she could not comply with the contract. She now takes the position that she had been

_____

[1] Since a valid agreement to arbitrate future disputes effectively ousts a court of jurisdiction, see Big Vein Pochahontas Co. v. Browning, 120 S.E. 487 (Va. 1928); Burks Pleading and Practice , § 12 (4th ed. 1952), each of the two defenses asserted here is essentially a plea to the jurisdiction. We need decide only one of them and decide the failure to submit the claim to the grievance-arbitration procedure. The cross-appeal of Owens-Brockway, No. 94-1265, with respect to filing a claim with the EEOC and obtaining a right to sue letter is dismissed without prejudice, and we express no opinion on the question.

4

discharged and, as a discharged employee, she had no standing to request or demand arbitration of such claims. There is no merit to this position, however. First, the district court found that the alleged discrimination plaintiff complains of occurred on June 1, 1993, the date the defendant terminated Miss Austin's employment. It also found that on June 1, 1993, the April 1, 1993 - March 31, 1996 Union Shop Contract was in effect. Plaintiff takes no exception to these findings. So any contractual rights plaintiff may have had on account of that discrimination arose during the term of the collective bargaining agreement in question and plaintiff could assert her rights under that contract. Second, even if plaintiff had been a terminated employee, she could have asserted any rights she had under the collective bargaining agreement even after its termination. Nolde Bros. Inc. v. Local No. 358, Bakery & Confectionery Workers Union , 430 U.S. 243 (1977), affirmed our decision that an employer and employee's "arbitration duties under the [collective bargaining] contract survived its termination with respect to claims arising by reason of the collective bargaining agreement." 430 U.S. at 248. Nolde Bros. held that a "Union's claim for severance pay under [an] . . . expired collective bargaining agreement [was] . . . subject to resolution under the arbitration provision of that contract." 430 U.S. at 243. We do not think the case before us is different from Nolde Bros.  in any significant degree.

Accordingly, we are of opinion and decide that Miss Austin had standing to assert her claims under the collective bargaining agreement.

B.

The next argument of Miss Austin is that arbitration of her Title VII and disability claims is permissive rather than mandatory. She relies on Section 1, Article 32 of the collective bargaining agreement which states that "[a]ll disputes not settled pursuant to the procedures set forth in Article 31, Grievance Procedures, may be referred to arbitration." She takes the position that the use of the word "may" as just stated makes arbitration permissive rather than obligatory. We are of opinion, however, that the purpose of the word "may" in this section of the collection bargaining agreement is to give an aggrieved party the choice between arbitration and abandonment of his claim, he

5

"may" either arbitrate or abandon the claim. The interpretation urged by Miss Austin would render the arbitration provision meaningless for all practical purposes. If the parties to such an agreement intended for arbitration to be permissive, there would be no reason to include Article 32, the arbitration provision in the contract, for the parties to an existing dispute could always voluntarily submit it to arbitration. Almost identical words ("either party may request arbitration") in a fact situation indistinguishable from that at hand has received the same construction we place upon it by the Eighth Circuit in Bonnot v. Congress of Independent Unions, Local No. 14, 331 F.2d 355, 359 (8th Cir. 1964), which followed Deaton Truck Lines, Inc. v. Local Union 612, 314 F.2d 418, 422 (5th Cir. 1963). See also American Italian Pasta Co. v. Austin Co., 914 F.2d 1103, 1104 (8th Cir. 1990).

Thus, we decide that the arbitration provisions in the collective bargaining agreement are obligatory and not permissive.

III.

A.

In deciding whether to enforce the arbitration provision in this collective bargaining agreement, we start with and rely upon the "well-recognized policy of federal labor law favoring arbitration of labor disputes." Adkins v. Times-World Corp., 771 F.2d 829, 831 (4th Cir. 1985), cert. denied, 474 U.S. 1109 (1986). In the Steelworkers Trilogy, the Supreme Court established that arbitration is favored in labor disputes. See e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564 (1960). We need not rely on the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., in this case because, in this circuit, the FAA is not applicable to labor disputes arising from collective bargaining agreements. Domino Sugar Corp. v. Sugar Workers Local Union 392, 10 F.3d 1064, 1067 (4th Cir. 1993).

B.

The collective bargaining agreement specifically provides that claims of gender and disability discrimination are subject to the grievance procedure:

6

ARTICLE 38
Fair Employment Practice and
Equal Opportunities

> 1. The Company and the Union will comply with all laws preventing discrimination against any employee because of race, color, religion, sex, national origin, age, handicap, or veteran status.
>
> 2. This Contract shall be administered in accordance with the applicable provisions of the Americans with Disabilities Act. Before taking action relative to this Section, the Company will meet with the Local Union, and both parties will have sufficient opportunity to express their opinions regarding an anticipated action.
>
> 3. Any disputes under this Article as with all other Articles of this Contract shall be subject to the grievance procedure.

Therefore, Miss Austin contractually agreed to submit her discrimination claims to the grievance procedure.

The grievance procedure specifically provides for binding arbitration.

ARTICLE 32
Arbitration

> 1. All disputes not settled pursuant to the procedure set forth in Article 31, Grievance Procedure, may be referred to arbitration by a notice given to the company or the union by the other within 10 days after the conclusion of Step 4 of the grievance procedure. . . .

* * * *

> 5. . . . . The arbitrator's decision shall be final and binding upon both parties.

7

As we have just demonstrated above, the collective bargaining agreement specifically provides for final and binding arbitration on account of each complaint asserted here: Title VII for the gender claim, and the Disabilities Act for the disability claim. And in part II.B, we have decided that such arbitration is obligatory, not discretionary.

C.

In Gilmer, the Supreme Court made clear that agreements to arbitrate statutory claims are enforceable. Gilmer , 500 U.S. at 26. The Gilmer Court recognized that arbitration of a statutory claim is not equal to giving up any right under a statute, it is simply another forum in which to resolve the dispute:

> [B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.

Gilmer, 500 U.S. at 26 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). Gilmer thus rejects the principal concern in Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), that arbitration is an "inappropriate forum" for the resolution of Title VII statutory rights. Alexander, 415 U.S. at 56.

Emphasizing its support of arbitration as a method of dispute resolution, the Gilmer Court stated:

> [A]ttacks on [the adequacy] of arbitration "res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants," and as such, they are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes."

Gilmer, 500 U.S. at 30 (third alteration in original) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481 (1989)). The Court rejected arguments that arbitration panels

8

may be biased; that limited discovery would hinder a plaintiff attempting to prove discrimination; that lack of a written opinion would result in decreased public awareness of discriminatory employment policies and ineffective appellate review; and that employers and employees have unequal bargaining power. Gilmer, 500 U.S. at 30-33. The Court refused to presume that arbitrators would be biased, Gilmer, 500 U.S. at 30; explained that choosing arbitration means "trad[ing] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration," Gilmer, 500 U.S. at 31 (quoting Mitsubishi, 473 U.S. at 628); noted that judicial review of arbitration awards, although limited, is adequate to ensure compliance with statutory requirements, Gilmer, 500 U.S. at 32 n.4; refused to decide that lack of class actions should bar arbitration, because individual conciliation should not be barred; and decided that the claim of unequal bargaining power is one that should be decided in individual cases, Gilmer, 500 U.S. at 32-33.

Gilmer further provides that once parties have contracted to arbitrate a statutory matter, the parties should be held to that agreement unless Congress intended to prohibit arbitration of that matter:

> "[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." . . . If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an "inherent conflict" between arbitration and the [statute's] underlying purposes.

Gilmer, 500 U.S. at 26 (quoting Mitsubishi , 473 U.S. at 628).

The language of the statutes could not be any more clear in showing Congressional favor towards arbitration. The Civil Rights Act of 1991, amending Title VII, states:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

9

Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081. The Americans with Disabilities Act contains identical language:

> Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this chapter.

42 U.S.C. § 12212. The meaning of this language is plain--Congress is in favor of arbitration.

A study of the legislative history of the Civil Rights Act and the Disabilities Act also does not reveal Congressional hostility towards arbitration, rather Congress has encouraged arbitration. See H.R. Rep. No. 40(II), 102d Cong., 1st Sess. 78, reprinted in 1991 U.S.C.C.A.N. 694, 764; H.R. Rep. No. 40(I), 102d Cong., 1st Sess. 97, reprinted in 1991 U.S.C.C.A.N. 549, 635; H.R. Conf. Rep. No. 755, 101st Cong., 2d Sess. (1990); H.R. Conf. Rep. No. 596, 101st Cong., 2d Sess. 89 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 598; H.R. Rep. No. 485(III), 101st Cong., 2d Sess. 76-77, reprinted in 1990 U.S.C.C.A.N. 445, 499-500. Gilmer provides that we look for a Congressional intent to preclude arbitration of the particular statutory rights. Gilmer, 500 U.S. at 26. We do not find that intent in the legislative history. In fact, the legislative history for both the Disabilities Act and the Civil Rights Act contains statements that demonstrate the opposite intent:

> This section encourages the use of alternative means of dispute resolution, where appropriate and to the extent authorized by law. . . .

> This amendment was adopted to encourage alternative means of dispute resolution that are already authorized by law.

H.R. Conf. Rep. No. 755, 101st Cong., 2d Sess. (1990) (Civil Rights Act); H.R. Rep. No. 485(III), 101st Cong., 2d Sess. 76, reprinted in 1990 U.S.C.C.A.N. 445, 499 (ADA).

Granted, the legislative history of the statutes is not as clear as the statutes themselves that Congress intended to allow arbitration of stat-

10

utory claims, and one of the conference reports does indicate that arbitration is permissible when voluntary. H.R. Conf. Rep. No. 596, 101st Cong., 2d Sess. 89 (1990), reprinted in 1990 U.S.C.C.A.N. 565, 598 ("It is the intent of the conferees that the use of these alternative dispute resolution procedures is completely voluntary."). In this circuit, conference reports are the most persuasive evidence of legislative intent, after the statute itself. Davis v. Lukhard, 788 F.2d 973, 981 (4th Cir.), cert. denied, 479 U.S. 868 (1986). Furthermore, a committee report states that "voluntary mediation and arbitration are far preferable to prolonged litigation for resolving employment discrimination claims." H.R. Rep. No. 40(II), 102d Cong., 1st Sess. 78, reprinted in 1991 U.S.C.C.A.N. 694, 764. Another committee report contains a statement about what that committee "believes" the effect of the statute is, however, that committee's belief is not dispositive of what Congress intended when it enacted the statute. H.R. Rep. No. 40(I), 102d Cong., 1st Sess. 97, reprinted in 1991 U.S.C.C.A.N. 549, 635 ("[T]he Committee believes that any agreement to submit disputed issues to arbitration, . . . does not preclude the affected person from seeking relief under the enforcement provisions of Title VII. This view is consistent with . . . Alexander. . . ."). We need not decide what the legislative history means in absolute terms because in our case it means that voluntary agreements to arbitrate statutory claims are allowed. To decide otherwise, we would have to hold that Gilmer has no effect at all and that Alexander is still the law that statutory claims cannot be the subject of required arbitration. We do not think Congress intended to return to the old law. Miss Austin's burden under Gilmer is to show that Congress intended to preclude arbitration of statutory claims, and she has failed to meet that burden. Even if the provisions of the legislative history are contrary to the statute, the statute must prevail. Davis v. Lukhard, 788 F.2d at 981. Especially in that event, the reasoning of Justice Scalia, concurring, in Thompson v. Thompson, 484 U.S. 174, 188, 191-192 (1988), should apply: "Committee reports, floor speeches, and even colloquies between Congressmen, . . . [only page references omitted] are frail substitutes for bicameral vote upon the text of a law and its presentment to the President."

Moreover, there is no inherent conflict between arbitration and the underlying purposes of the Disabilities Act or Title VII. Although Gilmer involved a claim under the Age Discrimination in Employ-

11

ment Act of 1967, 29 U.S.C. § 621 et seq ., the principles behind the Age Discrimination Act are the same as those behind the Disabilities Act and Title VII. The statement of the Court in response to Gilmer's claim that compulsory arbitration would be inconsistent with the purposes of the Age Discrimination Act holds true for any claim that compulsory arbitration would be inconsistent with the policies behind the Disabilities Act and Title VII. The Court replied:

> As Gilmer contends, the ADEA is designed not only to address individual grievances, but also to further important social policies. We do not perceive any inherent inconsistency between those policies, however, and enforcing agreements to arbitrate age discrimination claims. It is true that arbitration focuses on specific disputes between the parties involved. The same can be said, however, of judicial resolution of claims. Both of these dispute resolution mechanisms nevertheless also can further broader social purposes. The Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to advance important public policies, but, as noted above, claims under those statutes are appropriate for arbitration."[S]o long as the prospective litigant effectively may vindicate[his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."

Gilmer, 500 U.S. at 28 (alterations in original) (internal citations omitted) (quoting Mitsubishi, 473 U.S. at 637). The Court clearly has removed any doubt that age discrimination claims may be arbitrated. We are of opinion that the same reasoning is valid for gender and disability discrimination claims.

D.

Every case decided in the Courts of Appeal under§ 118 of the 1991 amendments to the Civil Rights Act has enforced anticipatory agreements to arbitrate claims involving statutory rights.**2** Three

_____

**2** The dissent relies upon Tran v. Tran, 54 F.3d 115 (2d Cir. 1995), for a conflict in the circuits. We think that reliance is misplaced, for Tran

12

federal cases arose in the context of arbitration clauses in employment
contracts growing out of securities registration applications.

_____
was a wage and hour case and has few similarities to the case at hand,
as we will now discuss.

The first, and a patent difference, is that the wage and hour law, 29
U.S.C. § 201, et seq. (the Fair Labor Standards Act) does not contain any
provision encouraging arbitration as does Title VII (§ 118 of the 1991
amendment), and the Disabilities Act (42 U.S.C.§ 12212), each of which
states that "arbitration is encouraged to resolve disputes arising under"
the respective statutes.

If that were not all, the Court has stated in Gilmer that ". . . all statu-
tory claims may not be appropriate for arbitration .. . ." 500 U.S. at 26.
In Barrentine v. Arkansas-Best Freight Systems, Inc., 450 U.S. 728
(1981), a wage and hour case which involved an arbitration provision in
a collective bargaining agreement, the Court declined to require arbitra-
tion prior to filing suit, principally on the ground that it had held that
"congressionally granted FLSA rights take precedence over conflicting
provisions in a collective bargaining compensation arrangement," 450
U.S. at 740, and followed four of its previous decisions in that respect.
450 U.S. at 741. Similarly, as the dissent relies on McDonald v. West
Branch, 466 U.S. 284 (1984), and Livadas v. Bradshaw, 62 U.S.L.W.
4495 (1994), we note that both McDonald and Livadas are cases under
42 U.S.C. § 1983, and that McDonald reasoned that "an arbitration pro-
ceeding cannot provide an adequate substitution for a judicial trial." 466
U.S. at 292. Livadas's reasoning was that"Congress, of course, has
given no more indication of any intent to foreclose actions like Livadas's
than the sort brought by the cab company [in the Golden State cases]."
62 U.S.L.W. at 4503.

Tran depends on Barrentine for its decision that an employee, subject
to a collective bargaining agreement with an arbitration procedure, is not
required to arbitrate wage and hour claims prior to filing suit under the
Fair Labor Standards Act, 29 U.S.C. § 201 et seq. With respect to dis-
crimination claims, however, the Supreme Court distinguished
Barrentine in Gilmer itself by stating that "reliance . . . is misplaced" "on
Alexander and its progeny, Barrentine . . . and McDonald . . . .", for the
proposition that would "preclude arbitration of employment discrimina-
tion claims." Gilmer, 500 U.S. at 33. Gilmer continued with regard to the
Alexander line of cases:

> First, those cases did not involve the issue of the enforceability
> of an agreement to arbitrate statutory claims. Rather, they
> involved the quite different issue whether arbitration of contract-
> based claims precluded subsequent judicial resolution of statu-

13

Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698 (11th Cir. 1992);
Willis v. Dean Witter Reynolds, Inc., 948 F.2d 305 (6th Cir. 1991);
Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229 (5th Cir. 1991).
A fourth federal case arose in the context of an arbitration clause in
an ordinary employment contract. Mago v. Shearson Lehman Hutton,
Inc., 956 F.2d 932 (9th Cir. 1992). And two state cases also arose in
the context of arbitration clauses in employment contracts growing
out of securities registration applications. Benefits Communications
Corp. v. Klieforth, 642 A.2d 1299 (D.C. 1994); Fletcher v. Kidder,
Peabody & Co., 619 N.E.2d 998 (N.Y. 1993), cert. denied, 62
U.S.L.W. 3369 (U.S. Nov. 29, 1993).

Bender v. A.G. Edwards & Sons, Inc. involved an employee who,
in her application for registration as a stock broker, agreed to arbitrate
employment disputes. Bender, 971 F.2d at 699. When the employee
filed a sexual harassment suit in federal court, the employer moved

---

tory claims. Since the employees there had not agreed to arbi-
trate their statutory claims, and the labor arbitrators were not
authorized to resolve such claims, the arbitration in those cases
understandably was held not to preclude subsequent statutory
actions. Second, because the arbitration in those cases occurred
in the context of a collective-bargaining agreement, the claim-
ants there were represented by their unions in the arbitration pro-
ceedings. An important concern therefore was the tension
between collective representation and statutory rights, a concern
not applicable to the present case. Finally, those cases were not
decided under the FAA, which, as discussed above, reflects a
"liberal federal policy favoring arbitration agreements."

Gilmer, 500 U.S. at 35 (quoting in the last two lines, Mitsubishi, 473
U.S. at 625). Our case, like Gilmer, involves the issue of the enforceabil-
ity of an agreement to arbitrate statutory claims. This case arises in the
context of a collective bargaining agreement so there may be concern for
any tension between collective representation and statutory rights. As we
find in part III.B, however, Miss Austin is a party to a voluntary agree-
ment which has explicitly agreed to the arbitration of her statutory com-
plaints. That should be enforced. Finally, as noted in part III.A, although
we do not rely on the FAA in this case, we do rely on the federal labor
law policy encouraging arbitration of labor disputes as expressed in the
Steelworkers Trilogy.

14

to stay the case pending arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Bender, 971 F.2d at 699. The Eleventh Circuit found, in light of Gilmer, that Title VII claims can be subject to compulsory arbitration and remanded the case with orders that the district court stay federal court proceedings pending the employee's arbitration of her Title VII claim. Bender, 971 F.2d at 699, 701.

Willis v. Dean Witter Reynolds, Inc. also involved an employee who agreed to arbitrate employment disputes when she signed a securities registration form. Willis, 948 F.2d at 306. When the employee filed state claims of sexual harassment and gender discrimination in a Kentucky court, the employer removed the case to federal court based on diversity jurisdiction. Willis, 948 F.2d at 306. The employee then amended her complaint to include a claim under Title VII. Willis, 948 F.2d at 306. The Sixth Circuit noted that the Supreme Court, in Gilmer, held enforceable the same arbitration clause at issue in that case. Willis, 948 F.2d at 307. The court discussed Gilmer's rejection of the Alexander principle that employment discrimination claims could not be arbitrated and Gilmer's support of arbitration as an alternative forum for resolution of disputes involving statutory rights. Willis, 948 F.2d at 308-10. The court concluded that the employee's discrimination claim was subject to her agreement to arbitrate. Willis, 948 F.2d at 312.

Alford v. Dean Witter Reynolds, Inc., was yet another case in which an employee sued her stock broker employer and alleged a violation of Title VII. Alford, 939 F.2d at 229. The case was first decided favorably to Alford in the lower courts, but the Supreme Court vacated the judgment of the Fifth Circuit and remanded the case for consideration in light of Gilmer. Alford, 939 F.2d at 229. The Fifth Circuit compared Title VII to the Age Discrimination Act, under which the Supreme Court decided Gilmer, and concluded that because the civil rights statutes were similar, claims under Title VII could be arbitrated just as claims under the Age Discrimination Act could be arbitrated. Alford, 939 F.2d at 230. The court noted Gilmer's rejection of the Alexander principle that arbitration was unfavored. Alford, 939 F.2d at 230.

Mago v. Shearson Lehman Hutton, Inc. involved an employee who, in her employment application, agreed to arbitrate employment dis-

15

putes. Mago, 956 F.2d at 933-34. When the employee filed a sexual harassment and gender discrimination suit against her employer, the employer moved to stay the case pending compulsory arbitration. Mago, 956 F.2d at 934. The Ninth Circuit concluded that the employee did not meet her burden under Gilmer of proving that Congress intended to preclude arbitration of Title VII claims and enforced the arbitration agreement. Mago, 956 F.2d at 935.

The District of Columbia Court of Appeals also has enforced an anticipatory agreement, in a securities registration application, to arbitrate employment disputes. Benefits Communications Corp. v. Klieforth, 642 A.2d 1299 (D.C. 1994). The employee filed a gender discrimination suit in Superior Court prior to the Supreme Court's Gilmer decision, and six weeks after Gilmer was decided the employer moved to compel arbitration. Klieforth , 642 A.2d at 1300. Although the employee's claim arose under the District of Columbia's Human Rights Act, the court explained that it usually looked to federal civil rights cases for guidance in interpreting the Human Rights Act. Klieforth, 642 A.2d at 1301-02. The court noted that Gilmer held that an agreement to arbitrate age discrimination claims could be enforced and that every federal court of appeals to decide the issue has extended Gilmer to cover Title VII discrimination claims. Klieforth, 642 A.2d at 1302 (citing Bender, Mago, Willis, and Alford). The court recognized that federal precedent "holds that employment discrimination claims can be subject to arbitration if the employer and employee have agreed to arbitrate disputes of that nature." Klieforth, 642 A.2d at 1303. Accordingly, the court found that the arbitration agreement was enforceable. Klieforth, 642 A.2d at 1304.**3**

_____

**3** The court also found that the 1991 amendments to the Civil Rights Act of 1964 did not modify or overrule Gilmer . Klieforth, 642 A.2d at 1304. While we agree with the court's statement that the statute on its face "expressly encourage[s]" arbitration as an alternative to litigation, we are not in entire agreement with the statement that it is not necessary to consider the statute's legislative history. Klieforth, 642 A.2d at 1305. Gilmer names legislative history as a place to look to discover Congressional intent to preclude arbitration of statutory claims. Gilmer, 500 U.S. at 26.

The Court of Appeals of New York has addressed the enforceability of agreements to arbitrate statutory claims, again in the context of employment contracts growing out of securities registration applications, and held that the agreements were enforceable. Fletcher v. Kidder, Peabody, Co., 619 N.E.2d 998, 1005-06 (N.Y. 1993). Fletcher consolidated two cases, one involved a race discrimination claim and the other involved a gender discrimination claim. Fletcher, 619 N.E.2d at 1000. The employees had agreed to arbitrate employment disputes when they signed securities registration applications at their respective firms. One employee filed a race discrimination claim and the other employee filed a gender discrimination claim, and each employer moved to compel arbitration under the respective agreements. Fletcher, 619 N.E.2d at 1000. In light of Gilmer, the court overruled a prior decision that held that anticipatory agreements to arbitrate employment discrimination claims were not enforceable. Fletcher, 619 N.E.2d at 1003. Finding Title VII comparable to the state law under which the case was to be decided, the court analyzed the legislative history of Title VII to find evidence of Congressional intent to prohibit anticipatory agreements to arbitrate statutory disputes. The court found no evidence of any such intent. Fletcher, 619 N.E.2d at 1003. The court discussed Gilmer's recognition of arbitration as a favorable method of dispute resolution and stated that after Gilmer, the question is "whether Congress, in creating a statutory remedy, intended that arbitration of the statutorily established claim would be foreclosed." Fletcher, 619 N.E.2d at 1004.

The only difference between these six cases and this case is that this case arises in the context of a collective bargaining agreement. Bender, Willis, Alford, Klieforth, and Fletcher arose in the context of employment contracts growing out of securities registration applications, and Mago also arose in the context of an employment contract. In all of the cases, however, including the case at hand, the employee attempting to sue had made an agreement to arbitrate employment disputes. Whether the dispute arises under a contract of employment growing out of securities registration application, a simple employment contract, or a collective bargaining agreement, an agreement has yet been made to arbitrate the dispute. So long as the agreement is voluntary, it is valid, and we are of opinion it should be enforced.

17

E.

A union has the right and duty to bargain for the terms and conditions of employment. 29 U.S.C. § 158(d). Through the collective bargaining process, unions may waive the right to strike and other rights protected under the National Labor Relations Act, 29 U.S.C. § 151 et seq. Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 705 (1983). The Supreme Court finds such waivers "valid because they rest on the premise of fair representation." Metropolitan Edison, 460 U.S. at 705 (citations omitted). There is no reason to distinguish between a union bargaining away the right to strike and a union bargaining for the right to arbitrate. The right to arbitrate is a term or condition of employment, and as such, the union may bargain for this right. This has been the law at least since Textile Workers v. Lincoln Mills, 353 U.S. 448 (1957): "Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike." Lincoln Mills, 353 U.S. at 455.

F.

Finally, the rule of the Supreme Court and this circuit is that an employee must follow the grievance procedure established by the collective bargaining agreement prior to filing suit in federal court. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965); Adkins v. Times-World Corp., 771 F.2d 829, 832 (4th Cir. 1985), cert. denied, 474 U.S. 1109 (1986). Thus, an employee cannot sue an employer without first going through the grievance procedure, and this is what Miss Austin is attempting to do. We need not decide any question of union good faith in this case (and none has been suggested), because Miss Austin must pursue her claim under the grievance procedure.

Miss Austin is a party to a voluntary agreement to submit statutory claims to arbitration. The collective bargaining agreement specifically lists gender and disability discrimination as claims that are subject to arbitration. This voluntary agreement is consistent with the text of Title VII and the Disabilities Act, the legislative intent behind those statutes, and the purposes of those statutes. Finding that Congress did not intend to preclude arbitration of claims under Title VII and the Disabilities Act, we hold that the arbitration provision in this collective bargaining agreement is enforceable.

18

IV.

We express no opinion as to whether or not arbitration may now be available or the result thereof. That question is not before us.

We have examined the final order disposing of the case in the district court and are not clear as to whether or not the disposition was without prejudice to the merits of Miss Austin's claim. Since we have affirmed an adjudication that the court could not hear the same because of agreed-upon arbitration, the dismissal of the case should be without prejudice to the merits of the claim asserted. Whether or not Miss Austin has abandoned her claim or otherwise rendered it unenforceable by choosing to attempt to litigate the same rather than arbitrate it is also a question upon which we express no opinion.

On remand, the district court will amend its order dismissing the case to insure it expresses no opinion on the merits of the claim, or whether or not the same is subject to arbitration, or whether or not it may now be so asserted.

The judgment of the district court is accordingly

AFFIRMED AS MODIFIED AND THE CASE IS REMANDED.

HALL, Circuit Judge, dissenting:

I respectfully dissent.

After its inventory of cases that follow the holding of Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), the majority concludes, "[t]he only difference between these . . . cases and this case is that this case arises in the context of a collective bargaining agreement." Supra at 17. I agree. The majority fails to recognize, however, that the only difference makes all the difference. A labor union may not prospectively waive a member's individual right to choose a judicial forum for a statutory claim.

I.

In Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974), a unanimous Supreme Court held that a person may sue under Title VII not-

19

withstanding that he has submitted his claims to arbitration under a collective bargaining agreement and lost. In reaching this conclusion, the Court stated that an employee's individual statutory right is completely independent of any contractual right he may have under a collective bargaining agreement, and the individual rights of employees are not subject to waiver by their union:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

\* \* \*

> . . . [W]e think it clear that there can be no prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. [cites omitted] These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver.

20

\* \* \*

> We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII. The federal court should consider the employee's claim de novo.

415 U.S. at 49-52, 59-60. Thus, under Gardner-Denver, a clause in which a union purported to waive employees' rights to pursue Title VII claims in court would be clearly unenforceable. Gardner-Denver was closely adhered to in Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728 (1981), and McDonald v. City of West Branch, 466 U.S. 284 (1984).

II.

Gilmer did not overrule this line of authority. The Supreme Court has said so, twice.

First of all, in Gilmer itself, the Court enforced an agreement to arbitrate contained in an individual (not collective) contract between a stockbroker and his employer. Writing for a seven-member majority, Justice White was careful to distinguish Gardner-Denver. Though he eschewed language in Gardner-Denver that expressed judicial mistrust of arbitration, he left its holding intact. He explained that the collective bargaining agreements in Gardner-Denver and its progeny did not contain the agreement of the employees to arbitrate statutory claims. Second, and of central importance here, because labor arbitrations involve contracts negotiated by unions, "[a]n important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case." Finally, Gilmer, unlike the labor cases, arose under the Federal Arbitration Act. 500 U.S. at 35.

In a more recent unanimous decision, the Court reiterated the vitality of Gardner-Denver, albeit in dicta:

21

> In holding that an agreement to arbitrate an Age Discrimination in Employment Act claim is enforceable under the Federal Arbitration Act, Gilmer emphasized its basic consistency with our unanimous decision in [Gardner-Denver].

Livadas v. Bradshaw, 114 S.Ct. 2068, 2080 n.21 (1994).

Several federal courts have recognized that Gardner-Denver, rather than Gilmer, continues to govern in the context of collective bargaining agreements. Tran v. Tran, 54 F.3d 115, 117, 118 (2nd Cir. 1995); Humphrey v. Council of Jewish Federations, 901 F.Supp. 703, 709-710 (S.D.N.Y. 1995); Jackson v. Quanex Corp., 889 F.Supp. 1007, 1010-1011 (E.D.Mich. 1995); Randolph v. Cooper Industries, 879 F.Supp. 518, 520-522 (W.D.Pa. 1994); Block v. Art Iron, Inc., 866 F.Supp. 380, 384-387 (N.D.Ind. 1994); Griffith v. Keystone Steel & Wire Co., 858 F.Supp. 802, 804 (C.D.Ill. 1994); Claps v. Moliterno Stone Sales, Inc., 819 F.Supp. 141, 145-147 (D.Conn. 1993). The case first above listed is a decision of the Court of Appeals for the Second Circuit; consequently, the majority's holding will create a split among the circuits.

Gardner-Denver is the law. Austin may pursue her contractual remedy, her statutory remedy, or both. The judgment of the district court should be reversed.

22