ARSLANIAN v OAKWOOD UNITED HOSPITALS, INC (ON REMAND)

Docket No. 189349. Submitted January 3, 2000, at Detroit. Decided April 21, 2000, at 9:00 A.M.

Michael Arslanian brought an action in the Wayne Circuit Court against Oakwood United Hospitals, Inc., and others, alleging defamation, intentional infliction of emotional distress, interference with contract, and retaliatory discharge and gender discrimination under the Civil Rights Act, MCL 37.2101 et seq.; MSA 3.548(101) et seq., in connection with his discharge from employment. The court, Diane M. Hathaway, J., granted summary disposition for the defendants, holding that the claims were barred by res judicata or collateral estoppel arising from arbitration of a grievance pursuant to a collective bargaining agreement. The Court of Appeals, MURPHY, P.J., and MICHAEL J. KELLY and GRIBBS, JJ., in an unpublished opinion per curiam, issued October 3, 1997 (Docket No. 189349), affirmed in part, reversed in part, and remanded, holding that the arbitration proceeding barred the claims that were not based on the Civil Rights Act, but did not bar the civil rights claims of retaliatory discharge and gender discrimination. The defendants sought leave to appeal to the Supreme Court, which, in lieu of granting leave to appeal, remanded the matter to the Court of Appeals for reconsideration in light of Rembert v Ryan's Family Steak Houses, Inc, 235 Mich App 118 (1999). 461 Mich 921 (1999).

On remand, the Court of Appeals held:

1. Rembert, in which the Court of Appeals held that a predispute individual employment agreement to arbitrate statutory claims (including those based on the Civil Rights Act) is not against public policy and is enforceable, does not apply to this case where the agreement to arbitrate was part of a collective bargaining agreement, not an individual employment contract. Arbitration of civil rights claims, if mandated by a collective bargaining agreement, is inappropriate because of union control of the arbitration process and because the interests of an individual in enforcing statutory rights may be subordinated to the perceived greater interest of the bargaining unit.

2. The arbitration clause of the collective bargaining agreement in this case is not enforceable with respect to civil rights claims

because the agreement lacks clear notice to employees that they would be waiving the right to adjudicate civil rights claims in a judicial forum. Such notice is a requirement of a fair arbitral process.

Affirmed in part, reversed in part, and remanded.

Civil Rights — Collective Bargaining Agreements — Arbitration.

An employee's right to judicial determination of a civil rights claim against an employer is not curtailed by any provision in a collective bargaining agreement mandating arbitration of statutory claims (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Allen J. Counard, P.C.* (by *Charles A. Butler*), for the plaintiff.

*Dykema Gossett PLLC* (by *Debra M. McCulloch* and *Jennifer J. Howe*), for the defendants.

ON REMAND

Before: MURPHY, P.J., and KELLY and GRIBBS, JJ.

MURPHY, P.J. In an earlier, unpublished opinion in this case, *Arslanian v Oakwood United Hosps, Inc*, issued October 3, 1997 (Docket No. 189349), we held that a previous arbitration proceeding, held pursuant to a collective bargaining agreement, barred plaintiff Michael Arslanian's subsequently filed claims of defamation, intentional infliction of emotional distress, and interference with contract. However, pursuant to *Rushton v Meijer, Inc (On Remand)*, 225 Mich App 156; 570 NW2d 271 (1997), which held that the public policy of this state entitles a plaintiff to direct and immediate review of civil rights claims in the circuit court, we further held that the previous arbitration proceeding did not bar plaintiff's additional claims of retaliatory discharge and gender discrimination under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA

3.548(101) *et seq.* Defendants sought leave to appeal this ruling, and our Supreme Court, in lieu of granting leave, remanded the matter for our reconsideration in light of *Rembert v Ryan's Family Steak Houses, Inc,* 235 Mich App 118; 596 NW2d 208 (1999), a decision of a special panel of this Court, which in pertinent part abrogated *Rushton.* 461 Mich 921 (1999). On reconsideration, we affirm our previous holdings.

Plaintiff worked for defendant Oakwood United Hospitals until an alleged assault on defendant Karoline McKinzie resulted in his discharge. Pursuant to the collective bargaining agreement, plaintiff filed a grievance and an arbitration hearing was held. The arbitrator denied plaintiff's grievance, finding that McKinzie's account of the assault was truthful and that plaintiff was legitimately discharged on the basis of that assault and his prior disciplinary record. Defendants filed a motion for summary disposition in response to plaintiff's subsequently initiated circuit court action, arguing that, as a result of the arbitration proceedings, plaintiff's claims were either barred by res judicata because they were or could have been brought in the arbitration proceedings or were essentially barred by collateral estoppel because the dispositive facts had been determined by the arbitrator. The circuit court granted defendants' motion and, as indicated above, on plaintiff's appeal as of right we affirmed in part and reversed in part.

We are now faced with the question whether *Rembert* compels a conclusion contrary to our previous decision allowing plaintiff to proceed with his CRA-based discrimination and retaliatory discharge claims. We find that it does not.

In *Rembert*, the special panel of this Court interpreted an individual employment agreement and held that predispute agreements to arbitrate statutory claims, including CRA-based claims, are not against public policy and can be enforceable. The special panel indicated that such an agreement would be valid if

> (1) the parties have agreed to arbitrate the claims (there must be a valid, binding, contract covering the civil rights claims), (2) the statute itself does not prohibit such agreements, and (3) the arbitration agreement does not waive the substantive rights and remedies of the statute and the arbitration procedures are fair so that the employee may effectively vindicate his statutory rights. [*Id.* at 156.]

Ultimately, the matter was remanded to the trial court for a determination whether the plaintiff's agreement was enforceable in light of those requirements. *Id.* at 166. Notwithstanding this explicit abrogation of *Rushton*, which also involved an individual employment contract, a like result is not compelled in this case because here we are concerned with an arbitration clause contained in a collective bargaining agreement.

In reaching its result, the special panel in *Rembert* analyzed the tension between two Supreme Court cases dealing with arbitration in the context of employment discrimination claims, *Alexander v Gardner-Denver Co*, 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974), and *Gilmer v Interstate/Johnson Lane Corp*, 500 US 20; 111 S Ct 1647; 114 L Ed 2d 26 (1991). In *Alexander*, as in the instant case, a union employee exercised the compulsory arbitration provision contained in a collective bargaining agreement. The Supreme Court held that the exercise of this provision did not preclude the employee from subse-

quently pursuing a title VII claim in court. Resting its decision in part on the then common view that with respect to statutory rights arbitration was inferior to traditional litigation, the Court concluded that the employee could vindicate contractual rights against discrimination at arbitration and could enforce independent statutory rights through litigation. *Alexander, supra* at 50-52.

Almost two decades later, the Supreme Court's attitude toward arbitration was decidedly different. In *Gilmer,* the Court held enforceable an agreement to arbitrate statutory claims contained in an individual employment contract. Carefully distinguishing *Alexander,* the Court reasoned that the factors that in that case had militated against arbitration of civil rights claims were not applicable to a case that arose under the Federal Arbitration Act (FAA), 9 USC 1 *et seq.,* and in which an individual employment contract was at issue. *Gilmer, supra* at 34-35. The Court noted "several important distinctions" between the cases:

> First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims. Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions. Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings. An important concern therefore was the tension between collective representation and individual statutory rights, a concern not applicable to the present case. Finally, those cases were not decided under the FAA, which, as discussed above,

reflects a "liberal federal policy favoring arbitration agreements." [*Id.* at 35, quoting *Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc*, 473 US 614, 625; 105 S Ct 3346; 87 L Ed 2d 444 (1985).]

In reaching the decision that public policy supports enforcing valid arbitration clauses, the special panel of this Court noted that the "critical distinction" between its case and *Alexander* was the one made salient by *Gilmer*, the difference between arbitration agreements arising in the context of a collective bargaining agreement and those arising out of individual employment contracts. *Rembert, supra* at 143. It is that same distinction that compels a contrary conclusion in the instant case.[1]

The special panel followed its analysis of *Gilmer* by discussing the progeny of that case, stating, "[s]ince the Court's landmark decision in *Gilmer*, the vast majority of federal and state courts that have addressed this issue have followed *Gilmer* and held that statutory employment discrimination claims are subject to predispute compulsory arbitration by way of employment contracts." *Rembert, supra* at 148. The special panel noted, however, that in the context of arbitration clauses found in collective bargaining

---

[1] This case ultimately turns on the presence of a collective bargaining agreement and the inherent concerns presented by taking enforcement of individual statutory rights out of the individual's hands. The presence of a collective bargaining agreement, however, is additionally relevant to the weight afforded current policy favoring arbitration. The cases holding that agreements to arbitrate should be enforced in the context of individual employment contracts in part relied on the Federal Arbitration Act and the Michigan Arbitration Act (MAA). Both acts reflect policy favoring arbitration. See *Gilmer, supra* at 35; *Rembert, supra* at 159. To the extent the policy reflected in the MAA is applicable in this case, we note that the act expressly exempts collective labor contracts. MCL 600.5001; MSA 27A.5001.

agreements, a question still exists regarding "whether and to what extent [*Alexander*] remains viable authority." *Id.* at 151, n 24. Referencing a few of the cases in which parties have raised this issue, the special panel concluded, "[o]ur decision does not turn on the outcome of this controversy, and *we express no opinion* concerning the proper application of *Gilmer* to general arbitration clauses in collective bargaining agreements." *Id.* at 152, n 24 (emphasis added). Accordingly, *Rembert* does not control the outcome of this case. Instead, we turn to those cases so addressing the question of the continuing viability of *Alexander.*

Though to some degree a split of opinion exists among jurisdictions addressing this question, a clear majority of courts have found that *Alexander* remains an effective bar to compulsory arbitration of civil rights claims in the collective bargaining context. The minority view is represented by the Fourth Circuit Court of Appeals decision in *Austin v Owens-Brockway Glass Container, Inc*, 78 F3d 875 (CA 4, 1996). In that case, the court held that a binding arbitration clause in a collective bargaining agreement barred an employee from pursuing in a judicial forum claims brought under title VII and the Americans with Disabilities Act. *Id.* at 885-886. The court thus extended *Gilmer*, noting the difference presented by the fact that a collective bargaining agreement was at issue, but deeming this difference irrelevant. *Id.* at 885. A strong dissent was authored by Judge Hall, who stated that "[t]he majority fails to recognize, however, that the only difference makes all the difference." *Id.* at 886. Judge Hall noted that the Supreme Court itself had made clear that *Alexander* was not

overruled by *Gilmer*,[2] and indicated that several federal courts recognized that the former decision still governs in the collective bargaining context. *Id.* at 887.

Those courts finding to the contrary of *Austin*, some explicitly rejecting its reasoning, are numerous. See, e.g., *Penny v United Parcel Service*, 128 F3d 408, 414 (CA 6, 1997) (concluding that "an employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right to obtain a judicial determination of his rights under a statute such as the ADA"); *Brisentine v Stone & Webster Engineering Corp*, 117 F3d 519, 526 (CA 11, 1997) (explicitly rejecting the "result and reasoning of the Fourth Circuit" in *Austin*, and finding Judge Hall's dissent more persuasive); *Harrison v Eddy Potash, Inc*, 112 F3d 1437, 1453 (CA 10, 1997) (adopting "the majority view . . . that *Alexander* and its progeny remain good law and that statutory employment claims are independent of a collective bargaining agreement's grievance and arbitration procedures") (citations and internal quotations omitted); *Pryner v Tractor Supply Co*, 109 F3d 354, 363 (CA 7, 1997) (applying *Alexander* and holding that "the union cannot consent *for* the employee by signing a collective bargaining agreement that consigns the enforcement

---

[2] The Supreme Court's recognition of the continuing vitality of *Alexander* in light of *Gilmer* was discussed in *Livadas v Bradshaw*, 512 US 107, 127, n 21; 114 S Ct 2068; 129 L Ed 2d 93 (1994), where the Court noted that there is no inconsistency between the two cases:

In holding that an agreement to arbitrate an Age Discrimination or Employment Act claim is enforceable under the Federal Arbitration Act, *Gilmer* emphasized its basic consistency with our unanimous decision in *Alexander.*

of statutory rights to the union-controlled grievance and arbitration machinery created by the agreement" [emphasis in original]); *Varner v Nat'l Super Markets, Inc*, 94 F3d 1209 (CA 8, 1996); *Tran v Tran*, 54 F3d 115 (CA 2, 1995); *Krahel v Owens-Brockway Glass Container, Inc*, 971 F Supp 440 (D Or, 1997); *Jackson v Quanex Corp*, 889 F Supp 1007 (ED Mich, 1995). We agree with this vast majority of courts and hold that *Alexander* still controls in the circumstances herein presented.

The concerns implicated by union-negotiated predispute agreements to arbitrate center on one key issue: the tension presented by the spectre of collective representation being the only method of enforcement of distinctly individual rights. See *Gilmer, supra* at 35. A thorough analysis of the potential problems associated with collective representation in the enforcement of individual rights is found in *Pryner, supra* at 360-363. There, Chief Judge Posner ultimately posits:

> The essential conflict is between majority and minority rights. The collective bargaining agreement is the symbol and reality of a majoritarian conception of workers' rights. An agreement negotiated by the union elected by a majority of the workers in the bargaining unit binds all the members of the unit, whether they are part of the majority or for that matter even members of the union entitled to vote for union leaders—they need not be. The statutory rights at issue in these two cases are rights given to members of minority groups because of concern about the mistreatment (of which there is a long history in the labor movement, see, e.g., *Steele v Louisville & Nashville RR*, 323 US 192; 65 S Ct 226; 89 L Ed 173 (1944)) of minorities by majorities. We may assume that the union will not engage in actionable discrimination against minority workers. But we may not assume that it will be highly sensitive to their special inter-

ests, which are the interests protected by Title VII and the other discrimination statutes, and will seek to vindicate those interests with maximum vigor. The employers' position delivers the enforcement of the rights of these minorities into the hands of the majority, and we do not think that this result is consistent with the policy of these statutes or justified by the abstract desirability of allowing unions and employers to cut their own deals. And we are given no reason to believe that the ability of unionized workers to enforce their statutory rights outside of the grievance machinery established by collective bargaining agreements is undermining labor relations. [*Id.* at 362-363.]

We agree with Chief Judge Posner's excellent summary of the potentially conflict-laden relationship that would exist were the presently minority view of the Fourth Circuit Court of Appeals in *Austin* to become the majority rule.

In *Heurtebise v Reliable Business Computers, Inc,* 452 Mich 405; 550 NW2d 243 (1996), Justice CAVANAGH's plurality opinion discussed competing public policies that, with respect to the adjudication of civil rights claims, on the one hand favor the enforcement of agreements to arbitrate such claims, but on the other support the historical right to their determination in a judicial forum. Justice CAVANAGH wrote:

[T]he judicial remedies provision in Const 1963, art 5, § 29, along with the tone of the debates that produced that provision, reveal that an aggrieved individual's access to judicial remedies is inseparably interwoven with the substantive civil rights and was intended by the people of Michigan to be the lifeblood of keeping those substantive civil rights alive. When the civil liberty at stake is equal opportunity in the pursuit of employment, I believe that the Michigan Constitution prevents us from granting the defendant's request to surgically sever the constitutional

right to a judicial forum. In short, I would find that an aggrieved individual's access to a judicial forum to remedy violations of his nonnegotiable, constitutionally guaranteed, and legislatively articulated civil rights, is also a nonnegotiable state right. Accordingly, I would find that the people of Michigan and the Legislature intended to preclude prospective waivers of judicial remedies. [*Heurtebise, supra* at 435-436.]

Though the recent special panel decision includes a passage rendering the force of this reasoning negligible in the context of individual employment contracts, *Rembert, supra* at 131, because of the potential conflicts just alluded to, Justice CAVANAGH's words still resonate in the context of collective bargaining agreements.

In accord with the vast majority of jurisdictions, we conclude that because the union asserts control in the labor arbitration process and because the interests of the individual in enforcing statutory rights may be subordinated to the perceived greater interest of the bargaining unit, mandatory labor arbitration of civil rights claims is inappropriate. See *Jackson, supra* at 1011 (citing *Alexander, supra* at 58, n 19). Moreover, as we indicated in our previous decision, the application of collateral estoppel and res judicata to plaintiff's civil rights claims would effectively contravene this conclusion. Accordingly, we hold that the trial court erred in granting summary disposition of plaintiff's statutory discrimination and retaliatory discharge claims.

Were the distinctions between an agreement pursuant to a collective bargaining agreement and one included in an individual employment contract not reason enough to support our holding in this case, we note that we would otherwise rule that plaintiff can

still pursue his statutory claims because the instant agreement clearly fails to satisfy one particular factor needed to meet the requirement of a fair arbitral process. Among other things, the arbitration proceedings must include clear notice to the employee that he is waiving the right to adjudicate discrimination claims in a judicial forum. *Rembert, supra* at 161. It was a deficiency in this regard, the lack of a "clear and unmistakable waiver," that led the Supreme Court in *Wright v Universal Maritime Service Corp*, 525 US 70; 119 S Ct 391; 142 L Ed 2d 361 (1998), to recently decline to reach the question whether a waiver provision contained in a collective bargaining agreement should be enforceable. *Id.* at 77, 82. There, the Court found that the union-negotiated arbitration clause at issue was "very general, providing for arbitration of '[m]atters under dispute,' . . . which could be understood to mean matters in dispute under the contract." *Id.* at 80. The Court noted that the "remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements." *Id.* Similarly, in this case the arbitration clause generally provides that an employee may grieve "an alleged violation of a specific article or working condition or section of this Agreement." Although the agreement does contain an antidiscrimination provision, it does not explicitly reference or incorporate statutory discrimination claims.[3] Further, it is provided that an arbitrator appointed under the agreement is "empowered to rule only upon the interpretation and construction of the

---

[3] The agreement provides in Section 4.5:

*DISCRIMINATION*—OUHI will not discriminate on the basis of race, color, sex, national origin, religion, marital status, height, weight, union activity, handicap, political beliefs or age.

specific provisions of this contract and shall not be empowered to . . . change or modify any provision . . . or introduce any new material." We additionally find, therefore, that together these provisions do not constitute a clear and unmistakable waiver of the right to bring a statutory discrimination claim in court. Plaintiff was not on notice that by pursuing arbitration with the union he would lose this right.

With respect to plaintiff's claims of defamation, intentional infliction of emotional distress, and interference with contract, we adopt the reasoning of our previous decision and hold that the trial court appropriately granted summary disposition because these claims are barred by virtue of the arbitration proceedings. For the reasons discussed above we additionally hold, also in agreement with our previous decision, that the trial court erred in granting summary disposition of plaintiff's statutory claims of retaliatory discharge and gender discrimination.

Affirmed in part and reversed in part. Remanded for proceedings consistent with this opinion.