**Kara N. JESSIE, Plaintiff,**

v.

**CARTER HEALTH CARE CENTER, INC. aka Sterling Acquisition Corp., Defendant.**

**Civil Action No. 95–5.**

United States District Court, E.D. Kentucky, at Ashland.

July 17, 1996.

William C. Rambicure, Susan C. Sears, Newberry, Hargrove & Rambicure, Lexington, KY, William H. Wilhoit, Wilhoit & Wilhoit, Grayson, KY, Maxwell L. Hammond, Grayson, KY, for plaintiff.

Roger A. Weber, Lisa A. Huelsman, Taft, Stettinius & Hollister, Cincinnati, OH, Robert B. Craig, Taft, Stettinius & Hollister, Crestview Hills, KY, Kenneth Williams, Jr., Ashland, KY, for Carter Health Care Center, Inc.

Roger A. Weber, Lisa A. Huelsman, Taft, Stettinius & Hollister, Cincinnati, OH, Robert B. Craig, Taft, Stettinius & Hollister, Crestview Hills, KY, for Sterling Acquisition Corp., formerly Carter Health Care Center, Inc.

### MEMORANDUM OPINION

HOOD, District Judge.

Before the Court is the motion of the defendant Carter Health Care Center (Carter) for summary judgment pursuant to Fed. R.Civ.P. 56(b). The plaintiff Kara N. Jessie (Jessie) has filed a response to which Carter has filed a reply.

Resolution of this motion involves the issue of whether the mandatory arbitration provision of the collective bargaining agreement (CBA) between Carter and Jessie precludes Jessie from pursuing her claim in a judicial forum. Concluding that Jessie is so precluded, this matter must be dismissed for want of jurisdiction.

### FACTUAL BACKGROUND

The facts, in so far as germane to this motion, are construed in the light most favorable to Jessie as follows.[1] Jessie is a 25 year old mother of two. After completing a six week certified nursing assistant (CNA) course at the Ashland Vocational School, Jessie applied for employment with Carter and was hired as a CNA in mid-May 1993.

In February of 1994, Jessie became pregnant with her second child. On March 25, Jessie attended her first prenatal appointment with Dr. Gary Gilbert. After the examination, Dr. Gilbert gave Jessie a typewritten note to prove that she was a patient of Drs. Gilbert and Edwards. The note lists her due date and states that "she is having a normal pregnancy." Below this language is the handwritten proviso that Jessie not lift more than 25 pounds or work more than eight hours per day.

After a number of meetings and discussions focusing on the appropriate course of action, Carter informed Jessie that no accommodation could be made. Jessie claims she was then constructively discharged and she has not returned to work at Carter since.

Maintaining that she had been discharged, Jessie filed a grievance under the CBA. The union noticed Jessie's case and it eventually proceeded through the grievance procedure and then to arbitration. Before completing arbitration, however, Jessie withdrew her grievance from arbitration and filed this action. She brought claims under the following statutes: (1) Title VII of the Civil Rights Act

1. The standard applicable to motions for summary judgment is well established and need not be elaborated upon here. Jessie, as the nonmoving party, enjoys the benefit of a doubt as to all factual evidence and all reasonable inferences must be drawn in her favor. *Kenty v. Bank One,* 67 F.3d 1257, 1262 (6th Cir.1995) (citation omitted).

of 1964, 42 U.S.C. § 2000e–2(a)(1), as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k); (2) Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101–12117; (3) Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601–2654; and (4) state law breach of contract and intentional or negligent infliction of severe emotional distress.

The Court previously dismissed the ADA and FMLA claims [Record No. 39] leaving only the Title VII claim and the state law claims, the subject of this motion for summary judgment.

## DISCUSSION

In accordance with the grievance and arbitration procedure, Jessie pursued her claims of gender and disability discrimination to the arbitration stage. Just prior to arbitration, however, Jessie withdrew her grievance and filed this action. Carter maintains that the mandatory arbitration provision of the CBA precludes Jessie from pursuing this action. *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996). Jessie argues that the dissenting opinion in *Austin* is the better view and that *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), governs.

The starting point is the meaning of the CBA itself. This agreement contains a non-discrimination clause forbidding discrimination on the basis of race, color, creed, national origin, religion, political belief, sex, age, union activity, or physical handicap. (Article 3). Nondiscrimination is to be interpreted in accordance with the laws and regulations of the United States and Kentucky. (Article 19). In the event of an alleged violation of a provision of the agreement, the controversy is to proceed to a grievance procedure. (Article 12). If this procedure is unsuccessful, the dispute may then be pursued to final and binding arbitration, which "[t]he parties agree is the only remedy for breach of [the] agreement. . . ." (Article 13). This agreement closely resembles that in *Austin* and, likewise, provides for obligatory arbitration.

■ Turning to the question of preclusion, this much is clear: it is permissible to enter into an agreement to arbitrate a claim based on a statutory right such as Title VII. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA."); *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 308 (6th Cir.1991) ("Although the Supreme Court does not overrule *Alexander* in *Gilmer,* it does reject a reading of *Alexander* as prohibiting the arbitration of employment discrimination claims.") (citation omitted). The question here is whether, in the context of a CBA, the parties' agreement that arbitration is the only means by which a statutory claim under Title VII may be redressed is an enforceable agreement. Aside from the 2–1 decision in *Austin,* very little authority speaks to this question.

The matter at hand is on all fours with that in *Austin* and the Court believes that the law as stated in *Austin* is sound. Relying on the *Gilmer* analysis, *Austin* concludes that Congress did not intend to remove Title VII claims from arbitration and that preclusion results from a failure to arbitrate where a CBA calls for mandatory arbitration. Jessie is required to proceed to arbitration and is precluded from pursuing her claim in court at this time.

■ The Court agrees with the reasoning in *Austin* that an agreement procured by collective bargaining should not be treated differently. The Union is under a statutory duty to bargain on behalf of its employees. In this process, the Union may waive certain rights such as the right to strike and other rights protected under the National Labor Relations Act. Choice of forum is a right like any other which can be made part of the *quid pro quo* and waived. *Austin,* 78 F.3d at 885. That for which the parties have bargained and voluntarily agreed is that to which they are entitled. *Merrill Lynch, Pierce, Fenner & Smith v. Jaros,* 70 F.3d 418, 421 (6th Cir.1995) (noting, in a different context, that except for blatant disregard of the law, the parties must abide by the attributes of the arbitration process to which they have agreed). So long as the agreement is voluntary, it will be enforced.

In *Gilmer* the Supreme Court takes a very different tack to preclusion significantly departing from *Alexander.* The Court agrees with the reasoning of *Austin* concerning the implications of the federal policy in favor of arbitration and the nature of collective bargaining on the analysis. Accordingly, the Court holds that a mandatory provision to arbitrate a Title VII claim is enforceable and precludes Jessie from pursuing a Title VII claim in court. The same result obtains for the claims pursuant to the Americans with Disabilities Act and the Family and Medical Leave Act.

### CONCLUSION

In light of the foregoing, the Court is without jurisdiction over the federal claims including those previously ruled upon. Having determined that the Court has no jurisdiction over the federal claims, the Court declines to exercise pendent jurisdiction over the state law claims assuming that the same are not likewise foreclosed by the mandatory arbitration provision of the CBA.

The Court shall enter an Order of even date consistent with the foregoing Memorandum Opinion granting the motion for summary judgment.