**Connie D. GRAY, Plaintiff,**

v.

**TOSHIBA AMERICA CONSUMER PRODUCTS, INC., Defendant.**

Nos. 3:94–0712, 3:95–0616.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 16, 1997.

Michael Ray Jennings, Lebanon, TN, for Plaintiff.

Karen L.C. Ellis, Bass, Berry & Sims, Nashville, TN, for Defendant.

## MEMORANDUM

ECHOLS, District Judge.

Presently pending before the Court is Defendant's Motion for Summary Judgment, to which Plaintiff has filed a Response. For the reasons discussed herein, Defendant's Motion is hereby GRANTED in PART and DENIED in PART.

Plaintiff brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000h–6, 42 U.S.C. § 1981a, 42 U.S.C. § 1983, the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 to 903, and Tennessee common law, alleging that Defendant discriminated against her on the basis of sex when it terminated her, and retaliated against her for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Tennessee Human Rights Commission ("THRC"). This Court consolidated the present action with Plaintiff's suit against her union, the International Brotherhood of Electrical Workers ("IBEW") (Civil Action No. 3:95–0616), in which Plaintiff charges that the IBEW did not fairly represent her in her dispute with Defendant Toshiba. Defendant filed this Motion for Summary Judgment,[1] arguing that this Court lacks subject matter jurisdiction over Plaintiff's claim. In particular, Defendant asserts that Plaintiff has already unsuccessfully submitted her sex discrimination and retaliation claims to binding arbitration pursuant to a collective bargaining agreement between the IBEW and Defendant. Defendant contends that the arbitrator's decision is final, and that this Court is thereby precluded from hearing Plaintiff's claim.

In ruling on a motion for summary judgment, the Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the Court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. If so, summary judgment dismissal is inappropriate.

The circumstances that gave rise to the present action concern Plaintiff's employment as a material handler and test inspector in Defendant's Lebanon, Tennessee, office. Plaintiff worked for Defendant from 1986

---

**1.** Although Defendant's motion is entitled "Motion to Dismiss," because the parties have submitted evidence outside the pleadings for the Court's consideration, the Court will treat Defendant's motion as one for summary judgment. Fed.R.Civ.P. 12(b).

until June 11, 1993, when she was discharged for fighting with another employee. Plaintiff alleges that, in firing her for fighting, Defendant imposed upon her the most severe penalty allowed under Defendant's disciplinary policy. She further claims that Defendant imposed this harsh punishment upon her despite the fact that Plaintiff had no prior disciplinary problems, and despite Defendant's imposition of lesser penalties for the same infraction on four male employees with disciplinary records. As such, Plaintiff claims that Defendant discriminated against her on the basis of sex when it terminated her.

On June 16, 1993, Plaintiff, represented by the IBEW, instituted a grievance proceeding against Defendant pursuant to the collective bargaining agreement ("Agreement"). Her complaint stated that Plaintiff was discharged in violation of the Agreement's proscription against inconsistent application of discipline. On July 28, 1993, Defendant denied Plaintiff's internal grievance.[2] Under the Agreement, the IBEW had ten days in which to appeal in writing the denial of Plaintiff's grievance. The IBEW did not file such an appeal until September 9, 1993, well past the ten-day deadline. Following the procedures set forth in the Agreement, the IBEW next attempted to submit the grievance to binding arbitration. An arbitrator took the case to decide whether, given the untimely appeal, the grievance was procedurally arbitrable. On December 26, 1994, the arbitrator ruled that, because the IBEW had not timely appealed Plaintiff's grievance, Plaintiff's claim was not arbitrable.

The present action was filed in this Court on August 23, 1994, before the arbitrator ruled Plaintiff's grievance to be unarbitrable. In the present case, Plaintiff alleges that Defendant engaged in unlawful sex discrimination and retaliation, violating Title VII of the Civil Rights Act of 1964, along with other federal and state statutory provisions and state common law. After the arbitrator ruled that Plaintiff's internal grievance with Defendant was not arbitrable, Defendant filed this Motion for Summary Judgment,[3] asserting that the arbitrator's decision in favor of Defendant is final and binding on the parties, and thus that Plaintiff is precluded from pursuing her claims in this Court.

As an initial matter, the Court will address the issue of whether Plaintiff's claim under 42 U.S.C. § 1983 may proceed. Section 1983 requires that the defendant act under the color of state authority. 42 U.S.C. § 1983. Plaintiff has alleged no facts that would indicate that Defendant acted in any respect other than as a wholly private actor. As such, the Court finds that Plaintiff's Section 1983 claim cannot proceed. Accordingly, Defendant's Motion for Summary Judgment with respect to Plaintiff's Section 1983 claim is hereby GRANTED.

The next issue presented is whether Plaintiff's remaining claims are barred by virtue of Plaintiff's prior unsuccessful arbitration. Defendant contends that, as a matter of law, an arbitrator's award with respect to a plaintiff's statutory claim is final, and that a court may not hear such a claim de novo after such an award has been granted. The Supreme Court first addressed this issue in *Alexander v. Gardner–Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In *Gardner–Denver*, the plaintiff alleged that he was discriminated against by the defendant on the basis of his race. *Id.* at 39, 94 S.Ct. at 1015. Pursuant to the collective bargaining agreement between the plaintiff's union and the defendant, the plaintiff's union representative submitted plaintiff's race discrimination claim to arbitration. *Id.* The arbitrator found for the defendant with respect to several of the plaintiff's allegations. *Id.* at 42–43, 94 S.Ct. at 1016–17. The plaintiff then brought a Title VII action in federal court. *Id.* at 43, 94 S.Ct. at 1017. The district court

---

**2.** On July 7, 1993, Plaintiff filed a sex discrimination complaint with the EEOC. In her Complaint in this case, Plaintiff alleges that after Defendant learned Plaintiff had lodged an EEOC complaint it refused to settle Plaintiff's internal grievance. Instead, as noted above, Defendant denied Plaintiff's grievance. Plaintiff contends that Defendant's reaction to her EEOC filing constitutes unlawful retaliation, in violation of Title VII.

**3.** The Court notes that Defendant's Motion was not filed until August 26, 1996, nearly two years after the arbitrator rendered his decision.

held that, because the plaintiff had voluntarily submitted his claim to arbitration, he was bound by the arbitrator's findings, and was thus precluded from bringing a Title VII action. *Id.* The court of appeals affirmed. *Id.*

The Supreme Court reversed, holding that a plaintiff whose union submits to arbitration a claim arising under a collective bargaining agreement's nondiscrimination provision is not precluded from later bringing a Title VII suit in federal court. *Id.* at 43, 94 S.Ct. at 1017. In so doing, the Court expressed a general distrust of arbitration as an exclusive forum for resolving employment discrimination complaints, stating that "[a]rbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII." *Id.* at 56, 94 S.Ct. at 1024.

The *Gardner–Denver* Court also stressed that an employee's contractual rights under a collective bargaining agreement are distinct from the employee's statutory Title VII rights. The Court noted that an employee who submits his discrimination claim to arbitration seeks to enforce his contractual right under the collective bargaining agreement to be free from discrimination at the hands of his employer. The action is essentially contractual in nature, with the employee complaining that his employer has breached its contractual duty not to discriminate. By contrast, the Court pointed out that an employee who files suit under Title VII is seeking to assert independent federal statutory rights provided by Congress, which are distinct from his rights under the collective bargaining agreement. *Id.* at 49–50, 94 S.Ct. at 1020–21. Furthermore, the Court noted that an employee arbitrating his discrimination claim under the terms of a collective bargaining agreement does not assert his claims individually. Rather, such employee is typically represented by his union's representative, which raises a serious concern about whether the overall interest of the union for all its employee members might compromise the individual interest of the complaining employee. The Court stated:

In arbitration, as in the collective-bargaining process, the interests of the individual employee may be subordinated to the collective interests of all employees in the bargaining unit. Moreover, harmony of interest between the union and the individual employee cannot always be presumed, especially where a claim of racial discrimination is made. In this respect, it is noteworthy that Congress thought it necessary to afford the protection of Title VII against unions as well as employers.

*Id.* at 58 n. 19, 94 S.Ct. at 1024 n. 19. Finally, the Court noted that a labor arbitrator's authority when construing the nondiscrimination provision of a collective bargaining agreement is limited to effectuating the parties' intent under that agreement; he "has no general authority to invoke public laws that conflict with the bargain between the parties." *Id.* at 53, 94 S.Ct. at 1022. The Court concluded that full protection of employees' rights under Title VII militated against giving preclusive effect to arbitration decisions which are rendered under the terms of collective bargaining agreements. *Id.* at 59–60, 94 S.Ct. at 1025 ("We think, therefore, that the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance arbitration clause of a collective bargaining agreement and his cause of action under Title VII").

Defendant contends that *Gardner–Denver*, although similar to the present case, has effectively been overruled by the more recent Supreme Court case of *Gilmer v. Interstate/Johnson Lane*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer*, the plaintiff claimed that he was discriminated against on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), when he was terminated from his position as a financial services manager. *Id.* at 23–24, 111 S.Ct. at 1650–51. As required by his employer, Gilmer registered as a securities representative with several stock exchanges. In his registration application with the New York Stock Exchange, Gilmer agreed to arbitrate any dispute, claim, or controversy arising between him and his em-

ployer that was required to be arbitrated by the Exchange. The rules of the Exchange required arbitration of employment disputes between the registrant and the member employer. *Id.* at 23, 111 S.Ct. at 1650–51. Although the registration application mandated that he submit his claim to arbitration, the plaintiff refused to arbitrate his ADEA claim, and instead filed a claim in federal district court. *Id.* The district court held that the contractual provision mandating arbitration of the ADEA claim was unenforceable, finding that Congress did not intend ADEA claimants to be forced to waive their right to a judicial forum. *Id.* at 24, 111 S.Ct. at 1651. The court of appeals reversed the district court, and the Supreme Court granted certiorari in order to resolve a conflict among the Circuits concerning whether compulsory arbitration clauses are enforceable with respect to complaints lodged under the ADEA. *Id.*

In affirming the court of appeals, the Supreme Court held that contractual provisions requiring individual ADEA claimants to submit their claims to arbitration are enforceable. *Id.* at 35, 111 S.Ct. at 1656–57. The Court rejected *Gardner–Denver*'s blanket disapproval of arbitration as a means of resolving federal statutory claims, arguing that Congress, in enacting the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, established a policy encouraging the use of arbitration to resolve many types of disputes, including statutory claims. *Id.* at 25, 111 S.Ct. at 1651. As such, the Court held that, in order to avoid the enforcement of a contract's compulsory arbitration clause, a plaintiff invoking federal statutory rights must affirmatively show congressional intent to preclude the resolution of his claim in binding arbitration. *Id.* at 26, 111 S.Ct. at 1652.[4] Because the Court found that Gilmer had not met this burden with respect to the ADEA claim, the Court held that the compulsory

arbitration clause in his registration agreement could be enforced, and that Gilmer would be required to arbitrate his claim. *Id.* at 35, 111 S.Ct. at 1656–57.

In espousing a position encouraging, rather than disfavoring, arbitral resolution of federal statutory claims, the *Gilmer* Court clearly limited the application of *Gardner–Denver* and its progeny, *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), and *McDonald v. West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). The Court, however, was careful to distinguish *Gilmer* from *Gardner–Denver* in several important respects that are pertinent to the present case. In particular, the Court noted that the issue in *Gilmer* was whether a federal statutory claimant could be compelled to arbitrate his claim under the terms of a contract between that claimant and the defendant. *Id.* at 35, 111 S.Ct. at 1656–57. By contrast, the issue in *Gardner–Denver* was whether a discharged employee whose grievance had been arbitrated pursuant to an arbitration clause in a collective bargaining agreement was precluded from subsequently bringing a Title VII suit based upon the conduct that was the subject of the grievance. *Id.* at 33–34, 111 S.Ct. at 1655–56. While the Court in *Gardner–Denver* recognized some of the particular problems associated with arbitration of discrimination complaints under a collective bargaining agreement—namely, as discussed above, the separate nature of the contractual and statutory claims, the possibility of inadequate advocacy by union representatives, and the limited authority of labor arbitrators—the *Gilmer* Court was faced with none of these concerns, because Gilmer voluntarily agreed to compulsory arbitration of any employment dispute with his employer in his own registration agreement. *Id.* at 35, 111 S.Ct. at

---

**4.** The *Gilmer* Court rejected the plaintiff's argument that compulsory arbitration of ADEA claims cannot be allowed because judicial review of arbitration awards is quite limited. 500 U.S. at 32 n. 4, 111 S.Ct. at 1655 n. 4. The implication of this position is that the Supreme Court has accepted the notion of extremely deferential treatment by federal courts of arbitration awards, and therefore would reject Plaintiff's argument that she is entitled to de novo review of

her Title VII claim after losing in arbitration. However, although this Court interprets *Gilmer* to take the above position with respect to *individual* compulsory arbitration contracts, as discussed below, the Court finds *Gilmer* is inapplicable in the context of collective bargaining agreements. As such, *Gilmer*'s deferential stance toward arbitration awards is not controlling in the present case.

1656–57. The *Gilmer* Court further distinguished prior cases in noting that Gilmer's employer, in seeking to enforce the arbitration clause, relied upon the Federal Arbitration Act ("FAA"). The Court noted that the FAA reflects a "liberal federal policy favoring arbitration agreements." *Id.* at 35, 111 S.Ct. at 1657 (quoting *Mitsubishi Motors Corporation v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985)). Accordingly, the *Gilmer* Court concluded that *Gardner–Denver* could not be invoked by Gilmer to avoid compulsory arbitration of his ADEA claim. *Id.*

After *Gilmer,* lower courts have struggled to answer the question of whether federal statutory claims that are subject to compulsory arbitration under the terms of *collective bargaining agreements* may instead be brought in federal court. Some courts, citing *Gilmer,* have recognized the important differences between arbitration held under a collective bargaining agreement and that held under an individual contract. These courts have declined to read *Gilmer* so broadly as to preclude a federal Title VII suit by a plaintiff subject to a collective bargaining agreement's compulsory arbitration clause. For example, in *Tran v. Tran,* 54 F.3d 115 (2d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996), the Second Circuit relied on the distinctions the *Gilmer* Court drew between that case and *Gardner–Denver* and its progeny to hold that compulsory arbitration under the terms of a collective bargaining agreement is inherently distinct from arbitration under an individual contract. *Id.* at 117–18. Accordingly, the court refused to require the plaintiff to arbitrate, and instead directed the district court to hear the plaintiff's federal statutory claim on the merits. *Id.* at 118. *See also Jackson v. Quanex Corporation,* 889 F.Supp. 1007 (E.D.Mich.1995) (distinguishing *Gilmer,* and therefore refusing to enforce the compulsory arbitration provision of a collective bargaining agreement against a Title VII claimant).

In addressing the precise issue presented by the instant case—namely, whether prior arbitration of a discrimination claim pursuant to the terms of a compulsory collective bargaining agreement precludes a subsequent Title VII action by the employee in federal court—several courts have uniformly held that such claims should not be barred. For instance, in *Humphrey v. Council of Jewish Federations,* 901 F.Supp. 703 (S.D.N.Y.1995), the plaintiff filed a race discrimination claim in federal court under Title VII and 42 U.S.C. § 1981. Pursuant to the terms of the collective bargaining agreement, the plaintiff had previously submitted his claim to binding arbitration, where the arbitrator rejected several of the plaintiff's claims. The defendant argued that the plaintiff was barred from bringing a subsequent federal discrimination action in federal court. The court held that the plaintiff was not so precluded. *Id.* at 710. The court found that *Gardner–Denver*'s reasoning regarding arbitration under collective bargaining agreements was not diminished by *Gilmer.* Rather, noting that "[c]ontractual rights under a collective bargaining agreement are legally independent from statutory rights under Title VII," *id.* at 709 (quoting *Frank v. New York State Elec. & Gas,* 871 F.Supp. 167, 172 (W.D.N.Y. 1994)), the court stated that "*Gilmer* does not alter or undermine the protection established in *Gardner–Denver* against waiver of statutory rights through collective-bargaining agreements." *Id.* at 710. As such, the court held that it had subject matter jurisdiction over the plaintiff's federal claims. *See also Pryner v. Tractor Supply Company, Inc.,* 927 F.Supp. 1140 (S.D.Ind.1996) (finding that *Gilmer* does not overrule *Gardner–Denver* in its entirety, and thus holding that the plaintiff's prior arbitration of his race discrimination claim under the terms of a collective bargaining agreement did not preclude a later federal court action).

■ The Court agrees with the courts interpreting *Gilmer* as distinguishing, rather than entirely overruling, *Gardner–Denver.* As discussed above, *Gilmer* expressly distinguished *Gardner–Denver* on the ground that *Gardner–Denver* addressed the unique concerns associated with arbitration under a compulsory collective bargaining agreement: the distinct nature of the contractual and statutory claims, the concern with the adequacy of advocacy by union representatives,

and the limited authority of labor arbitrators. In addition, *Gilmer* further distinguished *Gardner–Denver* on the basis that the agreement in *Gardner–Denver* was not governed by the FAA, and thus was not subject to the FAA's broad policy encouraging arbitral resolution of federal claims. The Court finds that these considerations and distinctions are relevant in the present case. Thus, the Court finds that *Gardner–Denver*'s reasoning regarding the effects of arbitration under compulsory collective bargaining agreements controls the present case.

First, the discrimination claim Plaintiff submitted to arbitration was a *contractual* complaint arising under the collective bargaining agreement between the IBEW and Defendant. The Agreement's nondiscrimination clause provides:

> The Company and Union agree that the provisions of this Agreement shall apply to all bargaining unit employees equally and that neither party, its agents, employees or representatives will discriminate against any such employee or applicant for employment because of such employee's race, creed, color, sex, age, national origin, religion, handicap or military status or service, or qualified employees or applicants with disabilities.

This provision confers a contractual right upon Plaintiff to be free from sex discrimination. Further evidence of the contractual nature of Plaintiff's claim lies in the language in the Agreement regarding the grievance process. The section referring to the procedure for filing grievances states:

> A "grievance" for all the purposes of this Agreement shall be defined as a difference between the Union and/or an employee(s) and the Company about wages, hours of work, fringe benefits, or working conditions *within the terms of the Agreement* (emphasis added).

Because a "grievance" under the Agreement refers to a dispute arising under the contract itself, and because the Agreement establishes a contractual right to be free from employment discrimination, the Court concludes that the grievance Plaintiff attempted to submit to arbitration was a breach of contract, rather than a Title VII, claim. Therefore, as in *Gardner–Denver*, the claim Plaintiff has filed in this Court is a federal statutory claim that is independent of the contractual claim she arbitrated under the collective bargaining agreement. In this Court, Plaintiff is seeking to enforce her "independent statutory rights" under Title VII and other federal provisions. *Gardner–Denver*, 415 U.S. at 49–50, 94 S.Ct. at 1020–21.

Second, in arbitrating her grievance, Plaintiff was represented by the IBEW rather than individually. Thus, the same "tension between collective representation and individual statutory rights" discussed in *Gilmer* is present in the instant case. Specifically, the IBEW is charged with representing the collective interests of all of its members, rather than each individual employee's interest. In taking any action adverse to Defendant, therefore, the IBEW must consider the probable consequences for all of its members. As such, as a general matter, the IBEW may have less incentive to fully and vigorously fight on behalf of individual members such as Plaintiff. In fact, Plaintiff has sued the IBEW in the action consolidated with the present case, charging that, by neglecting to timely appeal Plaintiff's grievance, the union failed to adequately represent her in prosecuting her discrimination claim. The Court finds that, as in *Gardner–Denver*, in this case there exists a concern with the union's representation of the collective interests of all of its members rather than of the Plaintiff's individual rights.

Third, as in *Gardner–Denver*, the arbitrator who decided Plaintiff's claim in this case was constrained by the terms of the collective bargaining agreement. The agreement provides that the chosen arbitrator "shall have no authority to modify, amend, revise, add to or subtract from any of the terms and conditions of this Agreement." As such, to the extent that the federal nondiscrimination laws conflict with or modify the collective bargaining agreement, the arbitrator had no authority to invoke such laws to vindicate Plaintiff's federal statutory rights. The Court finds that the authority of the arbitrator in the present case was too limited to safeguard completely Plaintiff's statutory rights under Title VII.

Fourth, as in *Gardner–Denver,* the present case does not fall under the ambit of the FAA. The Sixth Circuit has held that collective bargaining agreements are "contracts of employment," which are not governed by the FAA. *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 310 (6th Cir.1991) (citing 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce")). Therefore, the Court finds that the FAA's liberal policy favoring arbitration as a means of dispute resolution is inapplicable in the present case.

Finally, Defendant asserts that *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875 (4th Cir.1996), rather than the cases discussed above, should govern the present case. In *Austin,* a discharged employee filed suit against her employer for violating Title VII and the Americans with Disabilities Act ("ADA") by not reassigning her to light-duty work when she returned to her job after an injury, and by subsequently terminating her while she was on medical leave. The employer moved for summary judgment on the ground that Austin had failed to submit her claim to mandatory arbitration pursuant to the terms of the collective bargaining agreement between the defendant and the plaintiff's union, which agreement contained a nondiscrimination clause. *Id.* at 878. The district court granted summary judgment, and the Fourth Circuit affirmed. *Id.* at 878, 886. The court noted that the collective bargaining agreement specifically provided for binding arbitration of gender and disability claims, and therefore that Austin, as a party to the agreement, had contractually assented to submit her discrimination claims to arbitration. The court held that *Gilmer* made clear that agreements to arbitrate statutory claims are enforceable, and that such arbitration did not vitiate any statutory right, but merely provided an alternative forum in which to resolve the dispute. *Id.* at 880. As

such, the court could find no reason to distinguish arbitration under individual contracts from arbitration under collective bargaining agreements. *Id.* at 885 ("Whether the dispute arises under a contract of employment growing out of a securities registration application, a simple employment contract, or a collective bargaining agreement, an agreement has yet been made to arbitrate the dispute. So long as the agreement is voluntary, it is valid, and we are of the opinion it should be enforced"). Because the plaintiff had voluntarily agreed to submit her statutory claims to binding arbitration under the collective bargaining agreement, the court held that she was precluded from bringing a Title VII action in federal court. *Id.* at 885–86.[5]

The Court finds that *Austin*'s reasoning is misguided, and misinterprets *Gilmer.* The court focused primarily on the *voluntariness* of the agreement to arbitrate to determine enforceability, and, finding that Austin was a party to a collective bargaining agreement, voluntarily executed by the union and the employer, ordered that she comply with the agreement's requirement that she arbitrate her complaint. *Id.* at 885. The *Austin* court, however, failed to acknowledge the clear distinctions drawn by the *Gilmer* Court between compulsory arbitration under individual contracts and collective bargaining agreements, which distinctions preclude the application of identical legal standards to both types of contracts. As the dissent in *Austin* correctly noted, *Gilmer* and its progeny clearly left *Gardner–Denver*'s holding intact with respect to the enforceability and effect of compulsory arbitration in the context of a collective bargaining agreement. *Id.* at 887 (Hall, J., dissenting) (citing *Gilmer,* 500 U.S. at 35, 111 S.Ct. at 1656–57; *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)).

In addition, a theme underlying the concerns identified by the *Gilmer* Court appears

---

5. The Court notes that some courts have followed *Austin*'s holding that compulsory arbitration clauses in collective bargaining agreements are enforceable with respect to federal statutory claims. *See, e.g., Jessie v. Carter Health Care Center,* 930 F.Supp. 1174 (E.D.Ky.1996) (enforcing a collective bargaining agreement's compulsory arbitration clause where a Title VII plaintiff withdrew her claim from arbitration and instead filed a claim in the district court). However, as this Court finds *Austin*'s interpretation of *Gilmer* and *Gardner–Denver* to be flawed, this Court also finds *Jessie* inapplicable in the present case.

to be that an *individual employee* has not necessarily "voluntarily" assented to the terms of a collective bargaining agreement's compulsory arbitration clause. Under the federal labor laws, a union may collectively bargain on behalf of its members with mere majority approval, not unanimous approval, of such members. *Nat'l Labor Relations Bd. v. Local Union No. 103, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers, AFL–CIO,* 434 U.S. 335, 344, 98 S.Ct. 651, 657, 54 L.Ed.2d 586 (1978) (noting that the National Labor Relations Act requires that the bargaining agent for all of the employees in the unit must be a representative "designated or selected for the purposes of collective bargaining by the majority of the employees") (citing 29 U.S.C. § 159(a)). Further, the same tension between collective and individual representation that is applicable where the union advocates an individual employee's discrimination claim also applies where the union collectively bargains away the individual's right to adjudicate such a claim in federal court. Thus, the *Austin* court's summary conclusion that Austin was a party to a "voluntary agreement" to submit statutory claims to arbitration is questionable. As such, the Court finds that *Austin* is inapplicable in the present case.

In sum, the Court finds that *Gilmer* did not overrule *Gardner–Denver,* but instead limited the former case's application. Further, the Court finds the instant case presents similar issues and concerns as those addressed in *Gardner–Denver,* and therefore that *Gardner–Denver*'s rule governs. As such, the Court holds that Plaintiff is not, by virtue of her prior unsuccessful attempt to submit her discrimination claim to arbitration, precluded from bringing her claims in this Court. Accordingly, Defendant's Motion for Summary Judgment is hereby DENIED.

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby GRANTED in PART and DENIED in PART. In particular, Plaintiff's claim under 42 U.S.C. § 1983 is hereby DISMISSED. Accordingly, this case will proceed with Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000h–6, 42 U.S.C. § 1981a, the Tennessee

Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 to 903, and Tennessee common law.

## *ORDER*

Presently pending before the Court is Defendant's Motion for Summary Judgment (Docket Entry No. 21), to which Plaintiff has filed a Response. For the reasons discussed more fully in the accompanying Memorandum, Defendant's Motion is hereby GRANTED in PART and DENIED in PART. In particular, Plaintiff's claim under 42 U.S.C. § 1983 is hereby DISMISSED. Accordingly, this case will proceed with Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000h–6, 42 U.S.C. § 1981a, the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 to 903, and Tennessee common law.

This case is returned to the Magistrate Judge for further case management pursuant to Local Rule 11.

It is so ORDERED.